IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOHN KUIVILA, | ) CASE NO. 1:08 CV 2603 |
| Plaintiff, | ) |
| v. | ) JUDGE DONALD C. NUGENT |
| CITY OF CONNEAUT, *et al.*, | ) |
| Defendants. | ) <u>MEMORANDUM OPINION</u> |
| | ) <u>AND ORDER</u> |

This case is before the Court on Defendants' Motions for Summary Judgment. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants City of Conneaut, Edward Somppi, and Jon Arcaro have petitioned the Court for summary judgment dismissing Plaintiff, John Kuivila's claims for breach of contract, promissory estoppel, wrongful discharge in violation of public policy, and violation of his First Amendment rights. (ECF #10, 11). For the reasons set forth below, Defendants' motions are GRANTED.

## Procedural and Factual Background[1]

Plaintiff John Kuivila ("Plaintiff") filed the instant action against his former employer, Defendant City of Conneaut, and against the, then, interim City Manager, Edward Somppi. Plaintiff also sued John Arcaro, the Conneaut Police Chief. The case was filed in the Ashtabula County Court of Common Pleas, and was removed to federal court on November 3, 2008. (ECF #1). Mr. Kuivila has raised four claims, alleging (1) breach of contract, (2) promissory estoppel, (3) wrongful discharge in violation of public policy, and (4) violation of his First Amendment rights. (Complaint).

The relevant facts are generally undisputed. Defendant Jon Arcaro has been the Chief of Police in Conneaut, Ohio since 2002. The City of Conneaut operates under a City Manager form of government. The City Manager, from the time of Mr. Kuivila's hire through May of 2008, was Doug Lewis. The City Manager is the Chief Executive Officer and makes all decisions relative to hiring and firing of city employees, including the police chief and other police officers. The City Manager, however, does not have any authority to change or modify legislation passed by the City Council.

The Deputy Chief position held by Mr. Kuivila was created by legislation, passed by the Conneaut City Council in May of 2007. The legislation creating the position subjected the position to a one year probationary period and identified the position as a "classified civil service" position. In August of 2007, before Mr. Kuivila was hired, the ordinance was amended changing the

---

[1] The factual summary is based upon the parties' statements of facts. Those material facts which are controverted and supported by deposition testimony, affidavit, or other evidence are stated in a light most favorable to Plaintiff, the non-moving party.

-2-

classification of the position to "exempt from civil service."

Mr. Kuivila was hired for the Deputy Chief position on September 24, 2007. At the time of his hire, it was the intent of all City Council, the City Manager, and Mr. Kuivila that he would serve as Deputy Chief for a limited period of time, and would then take over as Police Chief when Chief Arcaro retired. Chief Arcaro was expected to work until May of 2008, and then to take accrued vacation until it was used up.[2] Mr. Kuivila was expected to be designated as Acting Chief while Chief Arcaro used his accrued vacation, and then to be appointed as Chief of Police, upon Chief Arcaro's retirement, at the beginning of 2009. Nonetheless, there was no written employment contract, and all parties understood that during the one year probationary period, Mr. Kuivila was serving as an "at-will" employee, subject to termination without cause.

Somewhere around February of 2008, Mr. Kuivila began to suspect that Chief Arcaro did not intend to retire, as previously planned. In April of 2008, Chief Arcaro rescinded his notice retirement. All parties knew that the City could not afford to keep both a Chief and a Deputy Chief on the payroll on an on-going basis. On or about May 7, 2008, Mr. Kuivila, Chief Arcaro, Mr. Lewis (who was retiring on May 8), Law Director Lori Lamer, and interim City Manager Edward Somppi had a meeting to discuss the situation and to attempt to find a compromise that would allow Chief Arcaro to retire at a later date, and would allow Mr. Kuivila to work under the Chief (possibly at a higher interim salary) until his retirement. Nothing was resolved, however.

On May 8, 2008 Edward Somppi took over as City Manager. Between May 9, 2008 and June

---

[2] Although this was clearly the expection of both the City Manager and Mr. Kuivila, Chief Arcaro contends that he had told the City Manager that he would work until the end of 2008, and then take accrued vacation until his actual retirement date.

16, 2008, various job performance issues arose with Mr. Kuivila. On June 16, Mr. Kuivila's attorney sent a letter to the City outlining what essentially amounted to a promissory estoppel claim. On June 18, 2008, Chief Arcaro forwarded a memo to Mr. Somppi setting forth concerns about Mr. Kuivila's performance stemming from events arising prior to the June 16th letter from Mr. Kuivila's attorney. On June 25, 2008, Chief Arcaro recommended to Somppi that Mr. Kuivila be terminated. On July 1, 2008, Somppi, in his role as City Manager, terminated Mr. Kuivila's employment. Plaintiff's probationary term under the hiring ordinance had not yet expired at the time of his termination.

### Summary Judgment Standard

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56©. The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues

that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### Analysis

A. <u>Counts One and Two (Breach of Contract/Promissory Estoppel)</u>

It is undisputed that Plaintiff was an at-will public employee, with no written contract, hired pursuant to a City Ordinance that provided for a one year probationary period during which Mr. Kuivila could be terminated without cause. In addition, Ohio law clearly provides that a public employee does not hold his office *ex contractu* (i.e. by contract), but *ex lege* (pursuant to statute or ordinance). *See, e.g., Cook v. Maxwell*, 57 Ohio App.3d 131, 134, 567 N.E.2d 292 (1st Dist. 1989), <u>citing</u> *Fuldauer v. City of Cleveland*, 32 Ohio St.2d 114, 290 N.E.2d 546 (1973); *Cobb v. Oakwood*, 789 F. Supp. 237, 240 (N.D. Ohio 1991).

Breach of contract and promissory estoppel claims do not apply to employment established by ordinance or statute. *See, Estabrook v. City of Dayton*, 1997 U.S. Dist. LEXIS 23756 (S.D. Ohio 1997). As there was no contract to breach, Mr. Kuivila's contract claim under Count One fails as a matter of law. Further, a claim may not be sustained against a municipal corporation on an implied or quasi-contract theory. Only express agreements properly adopted in accordance with the law are enforceable. *Wright v. City of Dayton*, 158 Ohio App.3d 152, 159 (2d Dist. 2004); *Ohio Power Co. V. Vill. Of Mingo Junction*, 2004 Ohio 4994 (7th Dist. 2004).

Finally, even if a promissory estoppel claim were enforceable against the City, this Court finds that as an at-will, probationary employee hired pursuant to a specific ordinance, it would have been unreasonable, as a matter of law, for Mr. Kuivila to rely on any promises that

contradicted the terms of the written ordinance. The ordinance clearly set forth a one year probationary period (which had not expired at the time of his termination), and clearly established that Mr. Kuivila's employment was at will. It stated that the position was intended to result in his promotion to Chief,[3] but made no promises that this would happen, and set no time line for that goal to be accomplished. Mr. Kuivila understood these terms, and in fact, the letter sent to the City by his attorney acknowledged that City Council "could abolish the position, which would leave Mr. Kuivila without a job." (Opp., Ex. 1: Def. Ex. U)

The City Manager had no authority to bind the City to any promise or contract that contradicted the terms of the hiring ordinance. *See, Shampton v. Springboro*, 98 Ohio St.3d 457 (2003). Therefore, any promise the City Manager may or may not have made purporting to guarantee Mr. Kuivila that he would be promoted to Chief or otherwise would maintain employment prior to the expiration of his probationary period would have contradicted the express terms of the ordinance. "[P]ersons dealing with municipal corporations are charged with notice of all statutory limitations on the power of such corporations and their agents, and must, at their peril, ascertain whether all necessary statutory formalities have been met." *Winfield Constr., Inc. v. Oakton, Inc.*, 2005 Ohio 3085, ¶ 24 (11th Dist. 2005)(citations omitted). Reliance on a promise contradicting the hiring ordinance is, therefore, unreasonable as a matter of law, and cannot satisfy the elements of a promissory estoppel claim. The promissory estoppel claim raised in Count Two must also be dismissed.

---

[3] This alone does not rise to the level of a promise to promote Mr. Kuivila to Chief. One would presume that most employees who are hired, are hired with the intention of them remaining employed, working hard, and possibly being promoted in the future. That does not mean that these things are inevitable or otherwise guaranteed.

B. <u>Count Three (First Amendment Retaliation)</u>

In the Third Count of his Complaint, Mr. Kuivila claims that he was terminated in retaliation for attempting to access the courts - an alleged violation of his First Amendment rights. He bases this claim on the fact that he had his attorney send a letter to the City prior to his termination, complaining that he "apparently will not become Chief of Police as promised." Even if the Court were to accept that Mr. Kuivila was terminated as a result of sending this letter, it would not amount to retaliation for attempting to access the courts. First and foremost, the letter from the attorney was not an attempt to access the courts - by its own terms, it purported to be an attempt to avoid accessing the courts.[4] Further, at the time the letter was sent, Mr. Kuivila had no basis to file a lawsuit. There is absolutely no evidence that the City attempted to prevent Mr. Kuivila from filing his lawsuit -either by threat, ultimatum or other action. In fact, if the City took this letter as a threat of litigation, it must have known that by terminating him it was actually encouraging him to go forward with the action, rather than discouraging his use of the courts.

When an alleged violation of the right of access to the courts occurs before a lawsuit is filed, "the plaintiff must establish that such abuse denied [him] 'effective' and 'meaningful' access to the courts. [H]e can do this only by showing that the defendants' actions foreclosed [him] from filing suit in state court or rendered ineffective any state court remedy [he] previously may have had." *Jones v. Union County*, 296 F.3d 417, 425 (6th Cir. 2002). The City in no way interfered with Mr. Kuivila's right or ability to pursue his claims in court. In fact, Mr. Kuivila

---

[4] The letter stated: "Mr. Kuivila does not want to cause problems and would like to have this matter handled quietly and amicably." There was no direct threat of any lawsuit contemplated by Mr. Kuivila.

did file a lawsuit and has had full and open access to the Court. His termination did not preclude (nor is there any evidence it was an attempt to preclude) him from accessing the courts.

Further, the First Amendment does not protect speech unless it touches on a matter of public concern. "Speech does not generally touch on a matter of public concern, as that requirement has been interpreted, where its aim is to air or remedy grievances of a purely personal nature." *Speedway Enters. V. City of Portage*, 1999 U.S. App. LEXIS 24832 (6th Cir. Mich. 1999). "A fairly bright line can be drawn between the expression of a concern about malfeasance of some type in the operation of public agency, whether it relates to misuse of public funds, public corruption, or other such matters, and speech relating entirely or almost entirely to a particular employee's job situation." *Ohio Council of the Blind v. Voinovich*, 1994 U.S. Dist. LEXIS 21292 (S.D. Ohio 1994). "[W]hile the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" *Garcetti v. Ceballos*, 547 U.S. 410, 420 (2006)(citations omitted).

There is nothing in the letter from Mr. Kuivila's attorney that addresses a matter of public concern. Count Three of Mr. Kuivila's Complaint does nothing more than that which the U.S. Supreme Court has warned against: attempt to constitutionalize an individual employee grievance. Mr. Kuivila attempts to re-characterize the nature of the letter in his arguments against summary judgment by, in essence, asserting that any employment issue relating to a public employee (in this case the Chief of police) is a matter of public interest because it may, derivatively, affect the public's image of the City and the budget, and because it determines who will serve in a public position. This is simply too far a stretch. All employment issues at the City have the same potential derivative effect on the City's image and budget and, every hiring

and firing of a public employee affects who holds a public position. It is clear, however, that not every employment issue is a matter of public concern for purposes of the First Amendment, just by nature of involving a public employee. Mr. Kuivila was upset that the position he was originally hired to fill became unnecessary (or at least the full promotion potential of the position was delayed). There are no allegations that Chief Arcaro was not fit to continue in his position, that his motives were improper, that the means or methods employed by the City and/or the police department were not legal or otherwise above board. His concerns were purely personal and had no bearing on the public interest. Mr. Kuivila's third claim for an alleged violation of his First Amendment right to Access the Courts is dismissed.[5]

C. Count Four (Violation of Public Policy)

In order to establish a wrongful discharge claim, an employee's discharge under the alleged circumstances must jeopardize a public policy. *Kulch v. Structural Fibers, Inc.*, 78 Ohio St. 3d 134, 151 (1997). Plaintiff has failed to establish this element of the claim.

The Sixth Circuit has held that under Ohio law, a plaintiff cannot state a claim for wrongful discharge in violation of public policy unless he or she is able to establish a violation of the underlying source of that policy. *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559 (6th Cir.

---

[5] Even if this claim were supportable as against Edward Somppi (the individual who terminated Mr. Kuivila), it would not stand as against the other Defendants. There is no evidence to show that Chief Arcaro terminated Mr. Kuivila, or that he had any power to do so. Further, the there is no evidence or allegation that the City has a custom, policy, or practice of violating employees' First Amendment right to access of the courts. Failure to plead such a policy or custom renders the claim defective as against the City. *See, e.g. Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993).

2003). Under Ohio law "when the employee's discharge is not actionable under the law that establishes the 'clear public policy,' the companion common-law claim for relief likewise fails as a matter of law." *Id.* at 568-69 (citations omitted). Plaintiff has not set forth sufficient facts to establish a violation of any of the underlying sources of policy upon which he has based his public policy claim, therefore, he cannot recover under a theory of wrongful discharge in violation of public policy, based on those same policies. Consequently, Plaintiff's claim for wrongful discharge in violation of public policy fails, as a matter of law.[6]

### Conclusion

For the reasons set forth above, Defendants' Motions for Summary Judgment (ECF # 10,11) are granted. Pursuant to Fed. R. Civ. Pro. 56, Plaintiff's Complaint is hereby dismissed.

IT IS SO ORDERED.

*[signature]*
DONALD C. NUGENT
United States District Judge

DATED: November 17, 2009

---

[6] Count Five purports to establish a claim under O.R.C. §2744.03(A)(6). This section of the Ohio Revised Code does not establish any private cause of action. Rather, it itemizes defenses and immunities of political subdivisions and their employees. Hence, there is no additional cause of action alleged, and this Count is also dismissed.

-11-